AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means   ☑ Original        ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>SIX CELLULAR TELEPHONES FURTHER )<br>DESCRIBED IN ATTACHMENT A )<br>) | Case No.  20-sw-116 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____Columbia_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before _____5/15/2020_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Magistrate Judge G. Michael Harvey_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:      05/01/2020                        _____
*Judge's signature*

City and state:   Washington, D.C.                      Magistrate Judge G. Michael Harvey
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  20-sw-116 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

### District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. 20-sw-116 |
| SIX CELLULAR TELEPHONES FURTHER | ) |
| DESCRIBED IN ATTACHMENT A | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein.

located in the _____ District of _____ Columbia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 844(i) | Damage by means of fire or explosive any property used in interstate or foreign commerce |
| 18 U.S.C. § 924(c) | Poss. firearm during crime of violence |
| 26 U.S.C. § 5861(d) | Unregistered firearm |
| 26 U.S.C. § 5861(f) | Manufacture of firearm in violation of provisions of 5861 |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

STEVEN LETTENEY  Digitally signed by STEVEN LETTENEY
Date: 2020.04.30 16:08:31 -04'00'

_____
*Applicant's signature*

Agent Steve Letteney
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 05/01/2020 _____

_____
*Judge's signature*

City and state:  Washington, D.C.

Magistrate Judge G. Michael Harvey
_____
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

| Item # | Description |
|--------|-------------|
| 000011 | COMPUTER EVIDENCE: CELL PHONE, ONE APPLE MOD A1688 CELL PHONE, IMEI: 355729075084355, WITH NO SIM |
| 000013 | COMPUTER EVIDENCE: CELL PHONE, ONE TCL WITH SIM CARD BEARING ICCID: 8901260022115829939 |
| 000014 | COMPUTER EVIDENCE: CELL PHONE, ONE APPLE MOD A1897 CELL PHONE, IMEI: 354834093001752, WITH CASE AND NO SIM |
| 000015 | COMPUTER EVIDENCE: CELL PHONE, ONE CELL PHONE MOD: ONE TOUCH 875T, IMEI: 013337000537770 WITH SIM |
| 000016 | COMPUTER EVIDENCE: CELL PHONE, ONE MOTOROLA MOD: XT1921-3 CELL PHONE, IMEI: 354146091623978 WITH NO SIM |
| 000017 | COMPUTER EVIDENCE: CELL PHONE, ONE APPLE MOD A1660 CELL PHONE, IMEI: 359461082313108 WITH NO SIM |

## ATTACHMENT B

*Property to be seized*

All information and data contained within the devices, to include, but not limited to fruits, evidence, information relating to, contraband, or instrumentalities, in whatever form and however stored, relating to evidence and instrumentalities of violations of federal laws, specifically, of Title 18, United States Code, Sections 844(i), 924(c) and Title 26, United States Code Section 5861(d) and (f) (the "target offenses"). Specifically, as described in the search warrant affidavit, including, but not limited to: call logs, phone books, photographs, voice mail messages, text messages, images and video, Global Positioning System data, and any other stored electronic data:

(i)     establishing or documenting the preparation to commit or the commission of the target offenses;

(ii)     identifying locations where the individual committed the target offenses, traveled to before and after the commission of the target offenses, and in preparation for the target offenses;

(iii)     reflecting the ownership and use of the items identified in Attachment A by the individual committing the target offenses;

(iv)     documenting meetings and communications between individuals committing one or more of the target offenses;

(v)     reflecting communications between the individual committing one or more of the target offenses and other individuals, discussing the commission of one or more of the target offenses;

2

(vi)     reflecting communications between the individual committing one or more of the target offenses and other individuals who may have assisted or provided support in the commission of one or more of the target offenses;

(vii)     containing photographs or video that would constitute evidence of a violation of the target offenses;

(viii)     documenting or containing evidence of the manufacturing, obtaining, secreting, transfer, expenditure and/or the concealment of explosives, which would constitute evidence of one of the target offenses; and

(ix)     documenting or containing evidence of the purchase of items from the assets derived from the commission of an arson, firearms or explosives trafficking offense in violation of Title 18, United States Code, Sections 844(i), 924(c) and Title 26, United States Code Section 5861(d) and (f)which would constitute evidence of one of the target offenses.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN THE MATTER OF THE SEARCH OF:
SIX CELLULAR TELEPHONES
FURTHER DESCRIBED IN
ATTACHMENT A

SW No. 20-sw-116

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41**
**FOR A WARRANT TO SEARCH AND SEIZE**

I, Steven Letteney, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the electronic devices listed below which are currently stored in Washington, D.C. hereinafter "**Target Devices**," further described in Attachment A, for the things described in Attachment B.

| Item # | Description |
|--------|-------------|
| 000011 | COMPUTER EVIDENCE: CELL PHONE, ONE APPLE MOD A1688 CELL PHONE, IMEI: 355729075084355, WITH NO SIM |
| 000013 | COMPUTER EVIDENCE: CELL PHONE, ONE TCL WITH SIM CARD BEARING ICCID: 8901260022115829939 |
| 000014 | COMPUTER EVIDENCE: CELL PHONE, ONE APPLE MOD A1897 CELL PHONE, IMEI: 354834093001752, WITH CASE AND NO SIM |
| 000015 | COMPUTER EVIDENCE: CELL PHONE, ONE CELL PHONE MOD: ONE TOUCH 875T, IMEI: 013337000537770 WITH SIM |
| 000016 | COMPUTER EVIDENCE: CELL PHONE, ONE MOTOROLA MOD: XT1921-3 CELL PHONE, IMEI: 354146091623978 WITH NO SIM |
| 000017 | COMPUTER EVIDENCE: CELL PHONE, ONE APPLE MOD A1660 CELL PHONE, IMEI: 359461082313108 WITH NO SIM |

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  I have been in this position since October 2014.  Before employment with

ATF, your affiant was a Special Agent with the U.S. Department of State, Diplomatic Security Service, for approximately five years.  Your affiant is an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code, and I am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18 United States Code.  Your affiant has received training and experience in interviewing and interrogation techniques, surveillance techniques, arrest procedures, search and seizure, and asset forfeiture. Your affiant also has specific and extensive additional training and experience with explosives and explosive investigations.  Your affiant has also been involved in firearms, explosives, tobacco, gang, organized crime, money laundering, and drug investigations, including the possession with intent to distribute and distribution of controlled substances, and conspiracies and offenses.

3.      Your affiant is presently assigned to Falls Church Group I of the Washington Field Division of the ATF.  This group runs the Washington, D.C. Arson and Explosives Task Force, which is responsible for Arson and Explosives investigations in Washington, D.C. and Northern Virginia.

4.      In the course of his training and experience, your affiant has become familiar with the methods and techniques associated with the manufacturing, distribution and possession of destructive devices and explosives. In the course of conducting investigations, your affiant has been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short-term undercover

2

operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing caller identification system data; and executing search warrants that have led to substantial seizures of narcotics, firearms, and other contraband.

5.     Through instruction, training, and participation in investigations, as well through consultation with other agents and law enforcement personnel, your affiant has become familiar with the manner and methods by which illegal destructive device manufacturers/users manufacture and use their illegal destructive devices. As a Special Agent with ATF, your affiant conducts criminal investigations in coordination with ATF Industry Operations Investigators (IOI) regarding violations of Federal firearm and explosive laws.  ATF IOIs are responsible for regulating the explosives industry.

6.     Through instruction, training, and participation in investigations, as well through consultation with other agents and law enforcement personnel, I have become familiar with the manner and methods by which individuals manufacture, possess or use illegal destructive devices. Based on this training and experience, I have learned that:

    a.  It is common for manufacturers to maintain parts and pieces of devices in secure locations within residences, vehicles, businesses and other locations over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities.

    b.  It is common for device manufacturers, possessors or users to maintain additional destructive devices in secure locations within residences, vehicles,

3

businesses and other locations over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities.

c.  Device manufactures, possessors, or users may also keep records of their activities to ensure they receive payment for the devices or to show there testing and use to other interested parties.  These records may be in written or electronic form.  Device manufacturers, possessors or users may maintain books, records, receipts, notes, ledgers, money orders, bank records, money, safety deposit boxes and keys, numerous business cards, photographs, address and telephone number books and papers, and other documentation relating to the transportation, ordering, sale and distribution of destructive devices, and contact information for associates and co-conspirators.  This documentary evidence may include credit card and hotel receipts, plane and bus tickets and receipts, car rental receipts, accounts and records in fictitious names, false identification, money orders, cashier's checks relating to cash transactions and records indicating the existence of storage/manufacturing facilities used.

d.  It also is common to maintain and store the aforementioned evidence of on electronic storage devices, including computers, mobile or cellular telephones, personal digital assistants (PDAs), handheld computers, MP3 players, digital hard drives, including, but not limited to iPods and external storage drives; and the media to store information, including diskettes, tapes or data storage

4

devices. Additionally, destructive device manufacturers, possessors and/or users may have photographs or video tapes of themselves manufacturing, testing or using such devices, and such items are often kept in their residence.

e. It is common for individuals who manufacture, possess or use illegal destructive devices to maintain in their residence items of clothing worn during previous uses of said devices. Generally, it is uncommon for individuals to purchase clothing to wear to while using a device and discard that clothing immediately thereafter. Based upon the training and experience of your affiant and other members of law enforcement, illegal destructive device manufacturers, possessors and users generally wear clothing that is not different from their normal day-to-day clothing.

7. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States.

8. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of Title 18, United States Code, Sections 844(i), 924(c) and Title 26, United States Code Section 5861(d) and (f) have been committed by Ashton Nesmith, and that evidence and instrumentalities of violations of these explosives, firearms and arson laws may be located within the **Target Devices**. Therefore, there is also probable cause to search the **Target Devices**, further described in Attachment A, for the

5

things described in Attachment B.

## **BACKGROUND**

9.      All information contained in this affidavit is either personally known to me or has been related to me by other law enforcement officers and/or other witnesses, or has been obtained from records and documents gathered during the course of this investigation.   This affidavit contains information necessary to support probable cause for the search of the **Target Devices**. The information contained in this affidavit is for the limited purpose of supporting the search and is not intended to include each and every fact and matter observed by or known to the affiant.

10.      Your affiant knows that computers and cellular telephones used by device manufacturers, possessors or users contain valuable information and evidence relating to their manufacturing, possession and/or use.  Such information consists of, but is not limited to, call logs, phone books, photographs, voice mail messages, text messages, images and video, Global Positioning System (GPS) data, browser history, and any other stored electronic data.   This information can (i) reflect the preparation for, arrangement of, and commission of the target offenses; (ii) identify locations where device manufacturers, possessors or users traveled to before and after the target offenses; (iii) reflect the ownership and use of the computers and cellular telephones by the device manufacturers, possessors or users; (iv) document meetings and communications between device manufacturers, possessors or users, their customers, associates, and co-conspirators; (v) reflect communications between device manufacturers, possessors or users and other individuals, discussing the manufacturing, use or possession of devices; (vi) reflect

communications between device manufacturers, possessors or users and other individuals who may have assisted or provided support in the manufacturer, possession or use of devices; and (vii) document or contain evidence of the obtaining, secreting, cutting, manufacturing, transferring, expenditure and/or the concealment of devices relating to the manufacturer, possession or use of devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

11.    Based on your affiant's training and experience, your affiant uses the following technical terms to convey the following meanings:

a.    Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS:  A Global Positioning System ("GPS") navigation device uses the Global Positioning System to display its current location.  It often contains records of the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System consists of 24 NAVSTAR satellites orbiting the Earth.

8

Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   e.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

   f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is,

long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

12.    Based on your affiant's knowledge, training, and experience, your affiant knows that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

13.    There is probable cause to believe that things that were once stored on the **Target Devices** may still be stored there, for at least the following reasons:

a.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.    Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.    Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

14.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Target Devices** were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the **Target Devices** because:

11

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.    Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.

Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

15.    *Nature of examination*.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your affiant is applying for would permit the examination of the **Target Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **Target Devices** to human inspection in order to determine whether they contain evidence described by the warrant.

16.    *Manner of execution*.   Because this warrant seeks only permission to examine devices already in law enforcement possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, your affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

17.    This affidavit is based upon information witnessed by your affiant, or provided to me by other law enforcement officers/agents, informants, and witnesses, all of whom your affiant

13

believes to be credible.  Because this affidavit is being submitted for the limited purpose of securing a search warrant for the aforementioned target devices, your affiant has not included each and every fact known to him concerning this investigation.  He has set forth only the facts which he believe are necessary to establish probable cause for the issuance of a Search and Seizure Warrant.

## PROBABLE CAUSE

18.     On April 12, 2020 at approximately 1025 hours Eastern Daylight Time (EDT) (NOTE: all times hereinafter are expressed in EDT unless otherwise noted), a suspected destructive device (hereinafter referred to as Device 1) was thrown over the fence of the Metropolitan Police Department of the District of Columbia (MPD) Sixth District Headquarters (6D) building located at 5002 Hayes Street Northeast, in Washington, DC. Officers from the MPD 6D station heard the noise of Device 1 breaking and responded outside to find a fire in the parking lot. The District of Columbia Fire Department (DCFD) was subsequently called and responded as did the investigators from the DCFD Fire Investigations Unit (FIU).

19.     An examination of the scene found that Device 1 had functioned but left sizable post-initiation fragmentation.  This fragmentation showed that Device 1 was comprised of a glass bottle with a wick placed into the neck of the bottle. An accelerant detection canine was utilized and alerted, indicating the presence of ignitable liquids on the remnants of Device 1. Based upon your affiant's training and experience, your affiant believes that Device 1 is a suspected improvised

14

incendiary bomb, often referred to as a Molotov cocktail, and therefore would fall under the definition of a destructive device as defined in Title 26, United States Code, Section 5845 (f) as well as the definition of a firearm, which includes a destructive device, as defined in Title 18, United States Code, Section 921(a)(3).  The remnants of Device 1 were taken into evidence and sent to the ATF National Forensic Laboratory – Washington, for further analysis. Upon completion of that analysis a formal destructive device determination will be completed.

20.     After this incident, investigators canvased the immediate area surrounding the MPD 6D station and spoke with an individual who your affiant will refer to as Confidential Source-1 (CS-1). CS-1 stated he/she was walking his/her dog and saw an individual described as a black male, medium complexion, five feet eight inches tall, unknown age, slim build, with unkempt, low cut hair, wearing a black jacket with unknown white and yellow lettering on it and blue jeans stuffing a blue rag into a bottle shortly before Device 1 was thrown into MPD 6D's parking lot. Video surveillance from the MPD 6D station shows CS-1 entering his/her residence with a canine shortly before Device 1 is seen coming over the fence into the parking lot.

21.     On April 22, 2020, at approximately 1751 hours an officer with MPD (hereinafter referred to as Officer 1) was parking an unmarked police car in front of the 6D station at 5002 Hayes Street Northeast, Washington, DC, at which time an individual later identified as Ashton Nesmith, wearing a black long sleeve shirt and black sweatpants, walked toward Officer 1 while holding a suspected destructive device, hereinafter referred to as Device 2. Nesmith lit Device 2 and threw it at the MPD officer while he was sitting in the aforementioned MPD vehicle.  Device

2 struck the vehicle's front windshield on the driver's side, bounced off and landed behind the vehicle where it functioned as designed, starting a fire.

22.     After throwing Device 2 at Officer 1, Nesmith fled on foot. Officer 1, along with other MPD officers (including one who witnessed the incident) chased and apprehended Nesmith in front of 711 49th Street Northeast, Washington, D.C.

23.     Your affiant responded to the scene and observed the post initiation fragmentation, to include shards of glass and a burned wick. Your affiant then asked Officer 1 to show him the path that Nesmith fled after throwing Device 2.  When Officer 1 and your affiant arrived at the location where Nesmith was apprehended, your affiant observed a lighter sitting on the ground at that location. This lighter was then collected by the District of Columbia Department of Forensic Sciences (DFS).

24.     An accelerant detection canine was utilized and alerted to the presence of ignitable liquids on the remnants of Device 2. Based upon your affiant's training and experience, your affiant believes that Device 2 is also a suspected improvised incendiary bomb, often referred to as a Molotov cocktail, and therefore would fall under the definition of a destructive device as defined in Title 26, United States Code, Section 5845 (f) as well as the definition of a firearm, which includes a destructive device, as defined in Title 18, United States Code, Section 921(a)(3). The remnants of Device 2 were taken into evidence and will be sent to the ATF National Forensic Laboratory – Washington, for further analysis. Upon completion of that analysis a formal destructive device determination will be completed.

16

25.     The MPD vehicle that Officer 1 was driving at the time of the incident was bearing Washington, D.C. license plate DC12507. Your affiant queried the National Law Enforcement Telecommunication System (NLETS) for DC12507 which returned the following information:

QRY/VEHICLE REGISTRATION

LIC/DC12507. EXP/2020-07-15 00:00:00. LIT/GOVERNMENT VEHICLE/METRO.

VIN/3FA6P0LU9JR271327. VYR/2018. VMA/FORD. VMO/189. VST/.

NAM/, METROPOLITAN POLICE DEPARTMENT. DOB/. OLN/

ADR/2175 WEST AVE NE, WASHINGTON DC 200021833.

VTI/K2236612  .

STATUS:ACTIVE

26.     A query of the Department of Transportation, National Highway Traffic Safety Administration database reveals that VIN 3FA6P0LU9JR271327 was manufactured in HERMOSILLO, MEXICO The vehicle is the property of the Metropolitan Police Department and the District of Columbia Government.  Both the Metropolitan Police Department and the District of Columbia Government conduct business in interstate commerce, for instance by purchasing vehicles and other equipment and supplies in interstate commerce.   The activities of the Metropolitan Police Department and the District of Columbia Government in enacting and enforcing laws also affect interstate commerce.  The vehicle sustained minor visible damage to the

17

front windshield where the device struck and bounced off.  The device functioned as designed in the street and there was no damage to other property or persons.

27.     A query of the National Firearms Registration and Transfer Record (NFRTR) show that NESMITH has no registered firearms (as defined by the National Firearms Act) to include destructive devices.

28.     On April 23, 2020, the Honorable Deborah A. Robinson, Magistrate Judge of the United States District Court for the District of Columbia issued a Search and Seizure Warrant for the residence of Ashton Nesmith located at 4501 Clay Street Northeast, Washington, D.C.

29.     On April 24, 2020, your affiant, along with other members of law enforcement executed the aforementioned warrant. During the search of this residence the devices listed below were located in the front room of the residence. They were then seized and subsequently processed into ATF evidence under the following item numbers:

| Item # | Description |
|--------|-------------|
| 000011 | COMPUTER EVIDENCE: CELL PHONE, ONE APPLE MOD A1688 CELL PHONE, IMEI: 355729075084355, WITH NO SIM |
| 000013 | COMPUTER EVIDENCE: CELL PHONE, ONE TCL WITH SIM CARD BEARING ICCID: 8901260022115829939 |
| 000014 | COMPUTER EVIDENCE: CELL PHONE, ONE APPLE MOD A1897 CELL PHONE, IMEI: 354834093001752, WITH CASE AND NO SIM |
| 000015 | COMPUTER EVIDENCE: CELL PHONE, ONE CELL PHONE MOD: ONE TOUCH 875T, IMEI: 013337000537770 WITH SIM |
| 000016 | COMPUTER EVIDENCE: CELL PHONE, ONE MOTOROLA MOD: XT1921-3 CELL PHONE, IMEI: 354146091623978 WITH NO SIM |
| 000017 | COMPUTER EVIDENCE: CELL PHONE, ONE APPLE MOD A1660 CELL PHONE, IMEI: 359461082313108 WITH NO SIM |

18

30.     During the execution of this search warrant the only other resident (besides Ashton Nesmith) hereinafter referred to as Confidential Source 2 (CS-2)[1] told members of law enforcement that Ashton Nesmith slept in the front room of the residence on the couch. Further she stated that the items surrounding the couch belonged to Ashton Nesmith.  Additionally, upon completion of the search, as your affiant was explaining that law enforcement had seized six cellular telephones from the residence, CS-2 stated that he/she had three cellular telephones, one with him/her and two more in her room.  CS-2 then asked your affiant if he/she could make sure that the other two devices were still in his/her bedroom.

31.     Your affiant then escorted CS-2 back to the bedroom where he/she located the other two cellular telephones that CS-2 stated belonged to him/her.

32.     The **Target Devices** are currently in secure storage at the ATF Offices located at 90 K Street Northeast, Washington, D.C.

## **CONCLUSION**

33.     Your affiant alleges the aforementioned facts show that there is probable cause to believe that evidence and instrumentalities of violations of the explosives, firearms and arson laws, specifically, Title 18, United States Code, Sections 844(i), 924(c) and Title 26, United States Code Section 5861(d) and (f) committed by Ashton Nesmith, are confined **Target Devices**.

---

[1] Though CS-2 was not advised of his/her Miranda rights, CS-2 was not in police custody. Further, CS-2 was not handcuffed at any point and CS-2 was told by law enforcement that he/she could leave at any time.

34.     I submit that this affidavit supports probable cause for a warrant to search the

**Target Devices** described in Attachment A and to seize the items described in Attachment B.

Respectfully submitted,

STEVEN
LETTENEY

Digitally signed by STEVEN
LETTENEY
Date: 2020.04.30 16:16:59
-04'00'

**STEVEN LETTENEY**
Special Agent
**BUREAU OF ALCOHOL, TOBACCO,
FIREARMS & EXPLOSIVES**

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on May 1, 2020

_____

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

20